12925

STATE v. ABERCROMBIE

(153 S. E., 344)

*Messrs. Hodges & Leatherwood,* for appellant,

*Mr. J. J. Leatherwood, Solicitor,* for the State.

May 16, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The defendant, James Abercrombie, was charged with the killing of one Jim Davis, and was tried in the Court of General Sessions for Greenville County and convicted of murder with recommendation to mercy. He denied having committed the crime, and claimed that he had been "framed" by his wife and one Lillian Brown, the principal witness for the State. On direct examination, he testified that the Brown woman had lived at his house against his wishes; that her conduct and that of his wife was bad and had met with his active disapproval; that consequently the two women had tried to get rid of him by having him arrested and put in jail on a false charge of vagrancy; and that they were still trying to accomplish their purpose.

Lillian Brown, in response to questions asked her by the defendant's counsel, denied that she had been a source of trouble in defendant's home, or that, in order to get him out of the way, she had had him put in jail, or that she had told anyone she wanted him out of the way.

On cross-examination of the defendant, the Court, over objection, permitted the Solicitor to question him along the line of his direct testimony with regard to the charge of vagrancy. The proof sought to be established by this examination, in rebuttal of the testimony brought out on direct examination, was that the charge of vagrancy upon which the defendant was imprisoned was a bona fide one, based upon the fact that he had not done an honest day's work in a number of years, and that his livelihood had been gained through the unlawful and disreputable business of "bootlegging."

The defendant complains that this was an attack by the State upon his general reputation, and that the Court committed error in permitting it to be done, as he had not put his reputation in issue. The contention is that the testimony elicited by counsel for the defendant from the witness Lillian Brown and from the defendant himself, with regard to his imprisonment on the charge of vagrancy, etc., did not

put his character in evidence, but that its tendency and effect was to show, by way of establishing the contention that appellant had been "framed," that the testimony of the Brown woman could not be relied upon as proof that the defendant was guilty of the crime of murder with which he was charged.

We think it is clear that the effect of the testimony brought out by the defense was not to place the character of the defendant in evidence, but went solely to the question of establishing his contention that he had been "framed" by his wife and Lillian Brown. It was not permissible, therefore, to allow the State to attack his general character on the ground that it had been placed in evidence by the defendant himself. The Court properly, however, allowed the Solicitor to cross-examine the defendant with regard to such charge, not as an attack on his general character, but to combat his contention that he had been "framed," and, for that purpose, to ask him whether he had done any honest work in a number of years, and whether his vagrancy had not been manifested by, and reached its culmination in, the disorderly life of a bootlegger. See Section 712, Criminal Code of 1922.

The appellant also complains that the Court erred in instructing the jury as to a "reasonable doubt." In this connection, the trial Judge charged that the burden of proof is on the State, and that before a conviction can be had the guilt of defendant must be shown beyond a reasonable doubt, and added: "And the grounds of that doubt must be found in the evidence that is adduced in the trial of the case." The appellant urges that this was error, for the reason that a reasonable doubt may arise, not only from the evidence adduced, but from a want of evidence, and that the Court's charge excluded all reasonable doubts that may have arisen from the lack of evidence. No decision of this Court is cited to support this contention, but

our investigation leads to the conclusion that it is supported by the greater weight of authority.

The reasoning in support of the minority view, however, is forceful and persuasive. It is to the effect that the reasonable doubt must necessarily arise and grow out of the consideration of the evidence adduced, which includes and comprehends a want or an insufficiency of evidence, its conflicting character, and its lack of probative force to remove the presumption of innocence with which the defendant is clothed. It is pointed out that it is the *evidence* that the law requires to show the guilt of the accused beyond a reasonable doubt; and if, upon an examination of the evidence adduced, such degree of strength is not manifest, either from the evidence or from a lack of it, a reasonable doubt of the guilt of the accused arises.

But even if it should be conceded that it was proper for the Court to have charged as contended by the appellant, still, when all that the trial Judge said with regard to the subject of reasonable doubt is read together, the omission complained of, if error, was rendered harmless. The Court told the jury, in this connection, among other things, that the law presumes every man, which included the defendant, though charged with a crime, to be innocent; and that such "presumption remains with him until it is removed *by evidence* to the satisfaction of the trial jury *beyond all reasonable doubt.*" This charge indicated to the jury that, if there was a lack of evidence, the presumption of defendant's innocence would not be removed, and that a reasonable doubt of his guilt would arise.

The Court also instructed the jury, using several illustrations to make clear his meaning, that men in everyday life act upon faith in each other; and that "so it is in the jury box, we act on faith, faith in the evidence that we hear adduced in the trial of the case." The appellant complains that both the language and the illustrations used by the Court conveyed to the jury the impression

that their verdict should be based upon faith and information instead of evidence, and that it created an atmosphere which tended to discredit appellant's defense that the State's witness had "framed" him.

It may be that the Court was not happy in his choice of the illustrations and of the language used in the charge complained of, but we have examined with care all that he said and are satisfied that the defendant was not harmed thereby. The Judge was endeavoring only to impress upon the minds of the jury that they, not having personal knowledge of the facts sought to be proved in the case, were bound, in order to reach a verdict, to exercise faith in the truth of the testimony upon which to rest their decision. In other words, he told the jury, in effect, that they were the sole judges of the credibility of the witnesses, and that it was left to them, after hearing the testimony, to say by their verdict whom they believed.

The appellant also complains that the Court, in instructing the jury that they might return a verdict of guilty with recommendation to mercy, committed error, in that he charged at such unnecessary length with inapt illustrations that the "jury must have inferred that his Honor considered this the proper verdict under the evidence, the same being in effect a charge upon the facts, an expression by his Honor of his opinion of the defendant's guilt."

We do not agree with the appellant's view. We have carefully read the portion of the charge objected to and find no reasonable grounds for the conclusion reached that the jury could have drawn from what was said the inference contended for.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.

MR. CHIEF JUSTICE WATTS did not participate.